UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LINDA JEAN HAIRSTON,

        Plaintiff,

v.                                    Case No. 1:11-cv-1266
                                    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for disability insurance benefits (DIB).

        Plaintiff was born on March 2, 1964 (AR 113).[1]  She alleged a disability onset date

of October 5, 2007(AR 113).   Plaintiff completed four or more years of college and earned a

Bachelor's degree (AR 27, 123).  She had previous employment as an assembler, cashier, public

school custodian and sales worker in a department store (AR 119).  Plaintiff identified her disabling

conditions as a herniated disc with nerve damage, lower back pain that continues into her left leg,

and severe pain requiring her to lie down (AR 118).  Plaintiff stated that these conditions limit her

ability to work as follows: no lifting or bending; she has to alternate between sitting and standing;

no twisting, stooping or reaching above her shoulder; she is in constant pain; she gets tired easily

throughout the day; when she gets a sharp pain in her leg it is hard to stand or find a comfortable

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

position; she is stressed and depressed because she cannot do activities she previously enjoyed; and she gets bad headaches (AR 118).  The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 28, 2010 (AR 12-19).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

2

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

3

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 5, 2007 and that she met the insured status requirements under the Act through December 31, 2012 (AR 14).  Second, the ALJ found plaintiff has a severe impairment of "mild to moderate L4-L5 lumbar spondylosis secondary to 2007 disc herniation" (AR 14).   At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14).  In this regard, the ALJ found that plaintiff did not manifest a significant ambulatory limitation for the requisite 12 months as described in the musculoskeletal system listings in the Regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B.2 (AR 15).  The ALJ also found that, as verified by recent imaging studies performed in March 2010, there is no sign of nerve root compromise as described in Listing 1.04 (Disorders of the spine) (AR 15).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) except that she can sit for 4/8 hours at one time and 8/8 total, stand/walk 2 hours at a time and 4/8 cumulatively, and bend, kneel, crawl and crouch occasionally" (AR 15).  The ALJ further found that plaintiff could not perform any past relevant work (AR 17).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 17-18).  Specifically, plaintiff could perform occupations in the national economy such as cashier (7,000 jobs) and office helper (9,000 jobs) (AR

18).[2]  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 5, 2007 (the alleged disability onset date) through May 28, 2010 (the date of the decision) (AR 18-19).

### III.  ANALYSIS

Plaintiff raised one issue on appeal.

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources.**

Plaintiff contends that the ALJ failed to give appropriate weight to the opinions of two treating physicians, John LeClaire, M.D., and Todd Rexford, M.D.

### A.        Legal standard

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring

---

[2] The court notes that the vocational expert testified that these jobs were available in the regional economy, defined as the State of Michigan (AR 37-38)

5

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2) . An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

## B. Carpal tunnel syndrome

In his decision, the ALJ did not find the carpal tunnel syndrome as a severe impairment (AR 14). Rather, citing a June 11, 2009 report from plaintiff's family physician, Dr. Rexford, the ALJ found that plaintiff's carpal tunnel syndrome was "mild" (AR 14, 364). In addition, Dr. Rexford's report stated that associated symptoms of the carpal tunnel syndrome included decreased mobility and swelling in the wrist joint, tingling sensation in the fingers, and

radiation to the wrist which the doctor classified as "intermediate" (AR 364). Dr. Rexford noted that plaintiff could not afford a work up for her carpal tunnel syndrome at that time (AR 364).

On January 8, 2010, plaintiff was examined by a consultative physician, Donald Sheill, M.D. (AR 399-410). Dr. Sheill noted that plaintiff's hands were free of atrophy, swelling or deformity, and that her fine and gross dexterity were intact (AR 409). While plaintiff stated that her "sensory is altered in all the fingers of the right hand," the doctor "could not verify full effort on right hand grip testing" (AR 409). Based on this examination, Dr. Sheill found no manipulative limitations (e.g., reaching, handling, fingering, feeling and push/pull) (AR 401).

Approximately three months later, Dr. Rexford referred plaintiff to Dr. LeClaire, a physician board certified in both electromyography and physical medicine and rehabilitation (AR 442). On April 5, 2010, Dr. LeClaire performed a clinical evaluation and conducted an electrodiagnostic examination of plaintiff (AR 442). The doctor concluded that this was an abnormal study and found "EMG evidence consistent with bilateral carpal tunnel syndrome, severe on the right and moderately severe on the left" (AR 442).

Plaintiff points out that the ALJ's decision does not refer to Dr. LeClaire's April 2010 EMG study of the carpal tunnel syndrome. Rather, the ALJ adopted Dr. Rexford's statement from June 2009 as well as a January 2010 consultative examination by Donald Sheill, M.D., to support his finding that plaintiff had only mild symptoms from carpal tunnel syndrome and no manipulative limitations (AR 14). While plaintiff's claim was primarily based on her back pain, the issue of her carpal tunnel syndrome was before the ALJ. Plaintiff's pre-hearing statement of facts alleged "carpal tunnel, right" as an impairment (AR 184). Then, at the administrative hearing, plaintiff testified that she could lift and carry "under five pounds" and that a gallon of milk was heavy for

7

her (AR 30). Dr. LeClaire's finding that plaintiff suffered from moderately severe to severe carpal tunnel syndrome could support plaintiff's claim that she could lift and carry "under five pounds." This restriction would be far below the ALJ's RFC determination that plaintiff could perform light work, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

The EMG test result was objective medical evidence with respect to plaintiff's carpal tunnel syndrome. *See, e.g.*, *McGlothin v. Commissioner of Social Security*, 299 Fed. Appx. 516, 523-24 (6th Cir. 2008) (discussing EMG test results as objective evidence for carpal tunnel syndrome). This test, which revealed bilateral carpal tunnel syndrome, severe on the right and moderately severe on the left, was the most recent evidence of the extent of plaintiff's condition, being performed months after both Dr. Rexford and Dr. Sheill examined plaintiff. This objective evidence could corroborate plaintiff's claim regarding her inability to lift more than five pounds and could explain Dr. Sheill's question regarding whether plaintiff used full effort during the examination. In addition, it is certainly conceivable that the pool of 16,000 cashier and office helper jobs identified by the vocational expert would be reduced if plaintiff's RFC included limitations with respect to weight lifting and manipulation. Under these circumstances, the court concludes that the ALJ should re-evaluate the limitations posed by plaintiff's carpal tunnel syndrome.

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should review Dr. LeClaire's opinion, re-evaluate plaintiff's carpal tunnel syndrome, determine if plaintiff has additional limitations due to this condition, and, if so, whether she can perform other work.

8

C.      Spine

1.      The November 8, 2007 electromyogram

The ALJ found that an MRI performed on March 2, 2010, indicated only mild degenerative changes with mild canal stenosis (AR 16, 424). Plaintiff contends that while the ALJ found that the March 2010 imaging study did not indicate any signs of nerve root compromise, the ALJ failed to take into consideration an electromyogram study performed on November 8, 2007 which indicated "EMG evidence consistent with right L3-4 radiculopathy" (AR 247). Plaintiff is incorrect. The ALJ addressed this test, which is cited as Exhibit "1F/10," noting that the EMG testing "was positive form right L3/4 radiculopathy" (AR 16). Plaintiff's claim of error will be denied.

2.      Dr. Rexford's opinion

Plaintiff contends that the ALJ improperly gave only limited weight to the opinions of Dr. Rexford. Plaintiff's Brief at p. 3. The ALJ reviewed an evaluation prepared by Dr. Rexford on July 9 2008 (AR 333-36). In this evaluation, entitled a "Lumbar spine residual functional capacity questionnaire," the doctor noted that plaintiff had a diagnosis of lumbar pain supported by clinical findings of an abnormal MRI (AR 333). Plaintiff's symptoms included daily low back pain extending to the hip, which became worse with activity (AR 333). The objective signs for the pain were a positive straight leg raising test and impaired sleep (AR 334). The doctor noted that plaintiff's pain would rarely interfere with the attention and concentration needed to perform simple work tasks (AR 334). Medication side effects included drowsiness caused by Vicodin (AR 334). The doctor placed the following limitations on plaintiff: she can walk 1/2 block without rest or severe pain; she can stand 10 minutes at a time before needing to sit down; she can sit for less than

9

2 hours in an 8-hour working day; she can "stand/walk" for less than 2 hours in an 8-hour working day; she needs to walk around every 15 minutes during an 8-hour working day; she must be able to shift positions at will between sitting, standing and walking; she needs to take unscheduled breaks; plaintiff can frequently lift less than 10 pounds, rarely lift 10 pounds and never lift 20 pounds or more; she can occasionally climb stairs, but rarely stoop, bend, crouch/squat or climb ladders; she can only use her arms for repetitive reaching for 10% of an 8-hour working day; and she is likely to be absent from work as a result of her impairments or treatment for four days per month (AR 334-36).

The ALJ gave only limited weight to Dr. Rexford's opinion:

> Concerning Dr. Rexford's assessment (11 F) [AR 333-36], the claimant averred during testimony that she actually saw Dr. Rexford only infrequently regarding her back as he is her primary care doctor and she consults him on a variety of medical issues. Accordingly, limited weight has been assigned his assessment of restrictions, which are not well supported and appear primarily geared to the demands of the claimant's past relevant work as a custodian, an occupation much more exertional than the assigned residual functional capacity would allow.

(AR 17).[3]

The ALJ's conclusion is supported by substantial evidence. As defendant points out, the clinical basis for Dr. Rexford's opinion was listed as only an "abnormal MRI" (AR 333). Here, the ALJ reviewed plaintiff's medical record since her alleged onset date (AR 16-17). The ALJ noted that plaintiff reported some improvement after physical therapy, but also elected to receive nerve root injections in December 2007, January 2008 and February 2008 (AR 16, 245, 271-72). Dr.

---

[3] When the ALJ asked plaintiff "[h]ow often do you see Dr. Rexford?" plaintiff replied, "I don't see him often for the situation with my back. I just see him if I have other problems or other medical conditions." (AR 32). While plaintiff may not have considered Dr. Rexford a treating physician, the medical records reflect that Dr. Rexford monitored and treated her back condition after May 1, 2008 (AR 367, 369, 371, 380, 382). Nevertheless, the ALJ's decision to give Dr. Rexford's restrictions limited weight is supported by the record. *See* discussion, *infra*.

LeClaire, the physical medicine and rehabilitation specialist, discharged plaintiff from his care on May 1, 2008, recommended that she return to Dr. Rexford's care, and noted that she was making slow but steady progress and still did not wish to see a surgeon (AR 332).

Dr. Rexford's treatment notes for June 3, 2008 referred to a seven month treatment for back pain and that plaintiff was "currently disabled" due to her inability to bend, lift, twist, shovel snow, mow the lawn and clean her home (AR 382-83). However, plaintiff still did not want surgery and had no follow up visits with specialists except Dr. Wilson for nerve root injections (the last being on February 29, 2008) (AR 383). Dr. Rexford's notes after July 2008 did not reflect a disabling back condition. Rather, plaintiff's back condition was improving. In July and August 2008, the doctor referred to plaintiff's back pain severity level as moderate to severe and stable (AR 380, 282). In September 2008, the back pain severity level moderate to severe and fluctuating (AR 375). In October 2008, the severity level was moderate to severe and stable (AR 371). Then, in January and March 2009, the back pain was moderate and stable (AR 367, 369).

Furthermore, while opining that plaintiff was extremely limited by back pain, Dr. Rexford denied that plaintiff suffered from swelling, muscle spasm, muscle atrophy or muscle weakness (AR 334), conditions which the court considers as reliable indicators of disabling pain for purposes of evaluating disabling pain under the Social Security Act. *See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (6th Cir. 1991) (reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption). This claim of error will be denied.

## IV.  CONCLUSION

The ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.  On remand, the Commissioner is directed to re-evaluate Dr. LeClaire's April 5, 2010 opinion, re-evaluate plaintiff's carpal tunnel syndrome, determine if plaintiff has additional limitations due to this condition, and, if so, whether she can perform other work.  A judgment consistent with this opinion will enter.


Dated:  March 19, 2013                     /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge